ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| American Boys Construction Company | ) | ASBCA No. 60515 |
| | ) | |
| Under Contract No. W56SGK-16-C-0013 | ) | |

APPEARANCE FOR THE APPELLANT:  Mr. Nadeem Alamyar
President

APPEARANCES FOR THE GOVERNMENT:  Raymond M. Saunders, Esq.
Army Chief Trial Attorney
MAJ Bruce L. Mayeaux, JA
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE PROUTY

This appeal is about the compensation due to appellant, American Boys Construction Company (ABC), for the government's terminating the above-captioned contract (the contract) for convenience. ABC alleges[1] that in the nine days between contract award and a government stop-work order, it incurred $67,793 in compensable costs under the contract – primarily for supplies that it obtained in preparation for contract performance, but also for stand-by labor costs (app. br. at 2; app. reply br.; *see also* R4, tab 10 at 4).[2] Because we find that ABC's purchase of the materials for which it now seeks compensation was unreasonably premature and that the amounts sought for stand-by labor costs have not been substantiated, we deny this appeal, although we would have been open to *some* stand-by labor costs if only ABC had presented evidence of such costs.

---

[1] After initially requesting that this appeal proceed via a hearing, appellant ultimately elected to proceed under the auspices of Board Rule 11, in which the appeal is decided exclusively upon the written record.

[2] ABC's briefs do not specify the amount of money sought in this appeal, nor does its complaint or any other filing made with the Board, except that its reply brief stated that it was seeking the amount requested by the termination settlement proposal it submitted to the contracting officer (app. reply br. at 4). That amount was $67,793 (R4, tab 10 at 4).

On 14 February 2016, the government's Regional Contracting Center – Capital in Kabul, Afghanistan (RCC), awarded the contract at issue in this appeal to ABC (R4, tab 1 at 1-2). This firm-fixed-price contract in the amount of $120,801 ($113,301 for the actual performance; $7,500 (estimated) for Defense Base Act Insurance) was for the installation of a "sniper screen" at a base in Kabul (*id.* at 3). The contract's 60-day period of performance was set to begin on 28 February 2016 and conclude on 29 April 2016. ABC was required to commence work within 5 days of receiving the notice to proceed from the government. (*Id.* at 6)

On 17 February 2016, ABC's project manager, Mr. Walusimbi John, emailed Sergeant First Class (SFC) Brandon Cooper, the contracting specialist assigned to provide administrative support on the contract (app. supp. R4, tab 1 at 2)[3]. Mr. John said that he had "attached [a] list of suppliers for the project." SFC Cooper responded by informing Mr. John that he was looking forward to working with him again, but that the email included no attachment (*id.* at 3). The record does not indicate whether ABC responded with a re-sent attachment, and, given the email sent by ABC to SFC Cooper three days later (discussed below), we think it unlikely that it did.

On 18 February 2016, four days after contract award, the government held a preconstruction conference as provided for by the contract (*see* R4, tab 1 at 15 (contractual provision incorporating Federal Acquisition Regulation (FAR) 52.236-26, PRECONSTRUCTION CONFERENCE (FEB 1995) into the contract), tab 2 (signed memorandum detailing conference)). According to a memorandum describing the conference that was signed by both government and ABC representatives, among other matters discussed, ABC was informed of the contractual requirement to tender material submittals to the government on a specified form, the Air Force Form 3000 (R4, tab 2 at 2-3). Government representatives who attended this meeting included Major (MAJ) Joseph Cederstrom (the contracting officer (CO)), SFC Cooper, and First Lieutenant (1LT) David Morin (the CO's technical representative) (R4, tabs 14-16). SFC Cooper provided written testimony that, although he did not specifically recall the discussion held during this meeting, the standard practice at all such meetings he attended in Afghanistan was to follow the agenda set forth in the

---

[3] ABC submitted to the Board, on 14 February 2017, a number of documents to act as its supplement to the Rule 4 file. After the first page, entitled, "Supplement," the pages are sequentially numbered through page 6, followed by a two-page declaration by ABC's president, Mr. Nadeem Alamyar. There were no tabs delimiting any groups of the documents, but we will consider all of the documents up to the declaration to be in tab 1 of ABC's supplement to the Rule 4 file, with Mr. Alamyar's declaration to constitute tab 2 to ABC's supplement to the Rule 4 file.

memorandum discussed above. This included informing the contractor that it was not to begin work prior to a notice to proceed issued by the CO and that materials needed to be approved by the CO via the Air Force Form 3000 "prior to installation" (R4, tab 15 at 2).

At some point around the time of the preconstruction meeting, government contracting personnel were alerted to the possibility that ABC might be the subject of security concerns that would preclude it from being permitted access to the base where the sniper screen was to be installed. 1LT Morin's testimony suggests that this knowledge came about just before this meeting (*see* R4, tab 16 at 3); SFC Cooper's testimony implies that those concerns arose just after that meeting (R4, tab 15 at 2-3). The exact timing of when contracting officials obtained this knowledge need not be resolved here.

Two days after the preconstruction meeting, on 20 February 2016, ABC's project manager, Mr. John, emailed the material submittals to SFC Cooper with an attached Air Force Form 3000. Mr. John copied MAJ Cederstrom and 1LT Morin on the message. (R4, tab 3) MAJ Cederstrom, the CO, testified that he never approved ABC's submittals (R4, tab 14 at 4). SFC Cooper and 1LT Morin also deny knowledge of any approval of the material submittals (R4, tab 15 at 3, tab 16 at 4-5).

ABC alleges, in Mr. Alamyar's declaration, that Mr. John spoke with 1LT Morin on 14 February 2016 about the materials needed for the project and that, due to their scarcity, 1LT Morin had given him the "green light" to purchase these materials at that time (R4, tab 12 at 3). We find that this allegation is, more likely than not, incorrect, and conclude that no such approval was ever given. Mr. Alamyar's declaration regarding Mr. John's discussions with 1LT Morin is, of course, double hearsay. Although we do not have any rule preventing the consideration of hearsay, *see* Board Rule 11(d) (permitting the weight of the evidence to rest within the discretion of the Board), the further the written testimony strays from the first-hand knowledge of the declarant, the less persuasive it becomes. In contrast, 1LT Morin specifically denied engaging in any such conversation in his declaration (R4, tab 16 at 4). This denial by 1LT Morin is made particularly persuasive by its consistency with his usual practice of disclaiming his authority to make contractual decisions that were reserved for the CO. It is further buttressed by the evidence that, contrary to ABC's allegations, the materials needed for the job did not appear to be scarce (*id.* at 4-5).

In any event, shortly after the preconstruction meeting, the government's security concerns about ABC ripened, and, on 23 February 2016, SFC Cooper emailed a stop-work order to ABC on behalf of the CO (R4, tabs 5, 14 at 4, tab 15 at 3). The stop-work order directed ABC to suspend all work on the contract and to cease its

3

efforts to obtain Defense Base Act insurance or any other materials needed for the performance of the contract (R4, tab 5).

ABC responded to the stop-work order by informing the government, in an email sent by Mr. John the same day, that it had already purchased the materials (R4, tab 8 at 1). As the email explained, "that was the reason [I] sent you the list of Suppliers [a] few days ago" (*id.*).[4]

On 25 February 2016, the installation commander, in fact, barred ABC employees from access to the New Kabul Compound (R4, tab 6). On 13 March 2016 MAJ Cederstrom, the CO, sent an email to ABC. He attached a letter dated 26 February 2016 that informed ABC that the contract had been terminated for the convenience of the government, effective 28 February 2016 (R4, tab 9). This termination for convenience letter stated that the termination was being effected pursuant to the terms of FAR clause 52.249-2, Alt I (*id.* at 2).[5] The letter further directed ABC to submit a termination settlement proposal in accordance with FAR 52.249-2, Alt I(e) (*id.*). The letter elaborated about the contents of the settlement proposal, stating that, "Materials already purchased specifically for the performance of this contract, and any additional costs you can demonstrate stemming directly from this termination must be accompanied by supporting documentation to substantiate the costs you are requesting" (*id.* at 4).

On 21 March 2016, ABC submitted a timely termination settlement proposal to the CO (R4, tab 10). The proposal was short on narrative description, but requested a total of $67,793 in compensation: $55,893 for supplies; $11,900 for labor costs "during stand by" (*id.* at 4). The proposal also included three pages of what appeared to be invoices for materials, written (apparently) in Pashto, but with numbers that summed to the $55,893 sought for supplies (*id.* at 5-7). The proposal included no evidence of payment for the labor costs, but did specify that it could be broken down as $3,500 for the project manager; $2,000 for the construction manager; $1,000 for each of the two "structure engineers"; $1,000 each for two "fence engineers"; and $300 for each of eight laborers (*id.* at 4).

On 25 March 2016, MAJ Cederstrom issued to ABC a "Settlement by Determination...in accordance with [FAR] 49.109-7" (R4, tab 11 at 2). MAJ Cederstrom's determination was that no costs should be paid to ABC. In particular, he wrote that ABC "was aware that the Notice to Proceed was not issued

---

[4] This explanation provides further support to our finding that the government never approved the purchase of the materials earlier. Had it done so, we would expect that Mr. John would have stated as much in this email.

[5] This clause, dated September 1996, governing the termination of firm-fixed-price contracts, is incorporated into the contract by reference (R4, tab 1 at 15).

4

on this contract [and the] contractor knew that it was prohibited from incurring any cost prior to the Notice to Proceed being issued." (*Id.*)

The CO's Determination letter did not inform ABC of any appeal rights (*see* R4, tab 10), but the referenced FAR provision, 49.109-7, provides that such a determination is appealable in paragraph (f). On 28 March 2016, ABC submitted its timely appeal to this Board.

From the time of the contract termination to the present, ABC has not, apparently sold the materials to other suppliers (app. reply br. at 2-3).[6]

## DECISION

The "entitlement to compensation for costs in a termination for convenience is determined by those applicable clauses of the FAR that are incorporated into the contract at issue." *Rex Systems, Inc.*, ASBCA No. 59624, 16-1 BCA ¶ 36,350 at 177,217. Relevant to the costs sought by ABC here, the applicable FAR clause in the contract, FAR 52.249-2, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE), ALTERNATE I (SEP 1996), provides in paragraph (g)(1)(i) for government payment to the terminated contractor for "the cost of this work" that was performed prior to contract termination. This comports with the generalized notion that fixed-price contracts terminated for convenience under FAR Part 49 (as this contract was) are "essentially converted into cost-reimbursement contracts." *Dellew Corp.*, ASBCA No. 58538, 15-1 BCA ¶ 35,975 at 175,783-84. The purpose of termination for convenience clauses is "to make the contractor whole for the costs incurred in connection with the terminated work." *SWR, Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,223 (citations omitted). These termination costs, however, must be reasonable, *Pro-Built Construction Firm*, ASBCA No. 59278, 17-1 BCA ¶ 36,774, and they must be proved by ABC. *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 767 (Fed. Cir. 1987).

I.      ABC's Materials Costs Would Not Have Been Incurred by a Reasonable Contractor

The CO advanced the argument, in his final decision, that costs incurred prior to the notice to proceed are not compensable (R4, tab 11 at 2). Perhaps recognizing this argument to be flawed (the government has identified no clause in the contract that precludes ABC from beginning preparatory work prior to receipt of the notice to proceed; *see also Pro-Built*, 17-1 BCA ¶ 36,774 (recovery of costs incurred prior to

---

[6] No direct evidence of this is contained in the Rule 4 file, its supplements, or any other evidence provided to the Board, but, under the circumstances, we will credit this admission made in appellant's filing.

notice to proceed)), the government now rests its defense upon the notion that it cannot be required to pay for materials obtained before it approved ABC's material submittals (gov't br. at 12-13). To the extent that the government is making the argument that, in the circumstances presented here, it was unreasonable to purchase the materials prior to approval of the submittals, its argument carries the day.

Under the circumstances presented here, we are not persuaded that ABC's actions in incurring the alleged costs for materials were reasonable. We do not go so far as to hold that a contractor may not, in any circumstances, be compensated for materials purchased before the government's approval of material submissions. Here we find only that it was unreasonable for the contractor to have made a purchase of materials prior to the government's agreement that this would be acceptable. This is true here, especially given the fact that the notice to proceed had not yet issued from the CO and, thus, ABC was not yet under the time pressure that such a notice would impose.

ABC does not dispute the government's argument that its failure to await the government's approval of its submittals would normally preclude recovery. Instead, it alleges that it did receive such approval and, in fact, needed to obtain such an early approval because of material scarcity (app. reply br. at 2). As noted above, however, we find that the record supports contrary factual findings. ABC has not met its evidentiary burden of proving the material costs were reasonable; thus, we deny this portion of ABC's appeal.

II.     ABC has Not Proved its Stand-By Labor Costs

We have previously held that reasonable stand-by labor costs incurred prior to the notice to proceed may be recoverable in a termination for convenience. *See Pro-Built,* 17-1 BCA ¶ 36,774. Nevertheless, we require proof of such costs, *see SWR,* 15-1 BCA ¶ 35,832 at 175,225, and ABC has simply not provided such evidence.

This is unfortunate, because we find it highly likely that ABC incurred some costs (though perhaps not all that it claimed) prior to the termination, but ABC declined to provide any evidence – either to the CO or to us – supporting the amount that it requested. We simply may not award a figure based upon speculation. Such work-arounds as the "jury verdict" method are unavailable to us when the contractor's failure to produce substantiation of damages is not due to a "justifiable inability" to produce such evidence, but is caused by a lack of effort by the contractor. *See Dawco Constr. Co. v. United States,* 930 F.2d 872, 881 (Fed. Cir. 1991), *overruled on other grounds by Reflectone, Inc. v. Dalton,* 60 F.3d 1572 (Fed. Cir. 1995) (en banc). Thus, we award no damages to ABC for its stand-by labor costs.

6

## CONCLUSION

For the reasons stated herein, ABC's appeal is denied.

Dated: 13 September 2017

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

REBA PAGE
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60515, Appeal of American Boys Construction Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals